# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ROBERT EUGENE WILSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 12-1365-JWL** |
| **CAROLYN W. COLVIN,**[1] | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

(hereinafter Commissioner) denying Social Security Disability (SSD) benefits and

Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and

1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and

1382c(a)(3)(A) (hereinafter the Act).  Finding error in the Commissioner's evaluation of

the medical opinions, the court ORDERS that the decision shall be REVERSED and that

judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g)

REMANDING the case for further proceedings consistent with this opinion.

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of
Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil
Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the
defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action
is necessary.

**I.   Background**

Plaintiff applied for SSD and SSI, alleging disability beginning May 31, 2000.  (R.

18, 137-50).  In due course, Plaintiff exhausted proceedings before the Commissioner,

and now seeks judicial review of the final decision denying benefits.  He alleges the

Administrative Law Judge (ALJ) erred in evaluating the severity of his mental

impairments at step three of the Commissioner's five-step sequential evaluation process

and erred in assessing residual functional capacity (RFC) by assessing insufficient

limitations resulting from his borderline intellectual functioning and by weighing the

medical source opinions erroneously.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052

(10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual

findings are supported by substantial evidence in the record and whether he applied the

correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than

a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind

might accept to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971);

Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors

of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ erroneously evaluated the medical source opinions. Therefore, the court will not provide an advisory opinion regarding the step three evaluation or the evaluation of borderline intellectual functioning. Plaintiff may present his arguments with regard to these alleged errors, if desired, to the Commissioner on remand.

## II.    Evaluation of the Medical Source Opinions

Plaintiff claims the ALJ erroneously rejected the medical source opinions of everyone who treated or examined Plaintiff for his mental impairments: Dr. Schwartz, the psychologist who provided a report of his psychological evaluation of plaintiff for the Social Security Administration; Ms. Martin, a psychiatric nurse-practitioner, who began treating Plaintiff for his mental impairments in July 2009, provided a medical source statement to the ALJ dated January 11, 2010 regarding limitations resulting from Plaintiff's mental impairments, and provided a letter to the Appeals Council dated July

4

27, 2010 clarifying the opinions expressed in her medical source statement; and Mr. Bremyer, a Licensed Clinical Professional Counselor, who provided therapy to Plaintiff beginning in July 2009, and provided a letter to the Appeals Council dated August 2, 2010, agreeing with the opinions expressed in Ms. Martin's medical source statement dated January 11, 2010.

The Commissioner argues that the ALJ properly evaluated and assigned appropriate weight to the medical source opinions of Dr. Schwartz; Dr. Fantz, a state agency psychologist who reviewed the record and completed a Psychiatric Review Technique form and a Mental RFC Assessment form for the Social Security Administration; Ms. Martin; and Dr. Warrender, a state agency psychiatrist who reviewed the record and affirmed the opinions of Dr. Fantz. The Commissioner's brief does not address the opinions of Ms. Martin and Mr. Bremyer presented for the first time to the Appeals Council after the ALJ issued his decision.

The court finds that remand is necessary because the decision of the Commissioner does not properly justify according greater weight to the opinions of the non-examining psychologist and psychiatrist over the opinions of the non-treating psychologist and the nurse-practitioner and counselor who provided medical and mental health treatment for Plaintiff. The court does not hereby intend to imply that on remand the opinions of the treating and non-treating healthcare providers must be accorded greater weight than those of the non-examining sources, but if the opinions of the non-examining sources are given

greater weight, it will be necessary for the Commissioner to provide proper explanation

for that determination and support it by the record evidence.

## A.    Standard for Evaluating Medical Source Opinions

"Medical opinions are statements from physicians and psychologists or other

acceptable medical sources that reflect judgments about the nature and severity of [a

claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."

20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such opinions may not be ignored and,

unless a treating source opinion is given controlling weight, all medical opinions will be

evaluated by the Commissioner in accordance with factors contained in the regulations.

Id. §§ 404.1527(d), 416.927(d); Social Security Ruling (SSR) 96-5p, West's Soc. Sec.

Reporting Serv., Rulings 123-24 (Supp. 2013).  The regulations include licensed

physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists,

and qualified speech-language pathologists within the meaning of "acceptable medical

sources" qualified to provide a "medical opinion."  Id., §§ 404.1513(a)(2), 416.913(a)(2).

They provide that the Commissioner may also use evidence from "other medical sources"

such as nurse-practitioners not on the list of "acceptable medical sources" to show the

severity of plaintiff's impairments and how they affect his ability to work.  Id.

§§ 404.1513(d), 416.913(d).  Such "other medical source" opinions must also be weighed

in accordance with the regulatory factors for weighing "medical opinions" when a

treating source opinion is not given controlling weight, and "depending on the particular

facts in a case, and after applying the factors for weighing opinion evidence, an opinion

6

from a medical source who is not an 'acceptable medical source' may outweigh the

opinion of an 'acceptable medical source,' including the medical opinion of a treating

source." SSR 06-3p, West's Soc. Sec. Reporting Serv., Rulings 331-32 (Supp. 2013).

A physician or psychologist who has treated a patient frequently over an extended

period of time (a treating source)[2] is expected to have greater insight into the patient's

medical condition, and his opinion is generally entitled to "particular weight." Doyal v.

Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining

physician [(a nontreating source)] who only saw the claimant once is not entitled to the

sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing

Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating

sources are generally given more weight than the opinions of nonexamining sources who

have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084

(10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing

Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d

---

[2]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.
"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

784, 789 (7th Cir. 1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955, 963 (3d Cir.

1984)).

When a treating source opinion is not given controlling weight, all medical source

opinions, including those of nurse-practitioners and therapists must be weighed using the

factors provided in 20 C.F.R. §§ 404.1527 and 416.927. <u>Watkins v. Barnhart</u>, 350 F.3d

1297, 1300 (10th Cir. 2003); <u>see also</u> SSR 06-3p, West's Soc. Sec. Reporting Serv.,

Rulings 327-34 (Supp. 2013). Those factors are: (1) length of treatment relationship and

frequency of examination; (2) the nature and extent of the treatment relationship,

including the treatment provided and the kind of examination or testing performed; (3) the

degree to which the physician's opinion is supported by relevant evidence;

(4) consistency between the opinion and the record as a whole; (5) whether or not the

physician is a specialist in the area upon which an opinion is rendered; and (6) other

factors brought to the ALJ's attention which tend to support or contradict the opinion. <u>Id.</u>

at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); <u>see also</u> <u>Drapeau v. Massanari</u>,

255 F.3d 1211, 1213 (10th Cir. 2001) (citing <u>Goatcher v. Dep't of Health & Human</u>

<u>Servs.</u>, 52 F.3d 288, 290 (10th Cir. 1995)). Although a factor-by-factor analysis is not

required, an ALJ's decision must be sufficiently specific to make clear to any subsequent

reviewers the weight he gave to each medical source opinion and the reasons for that

weight. <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1258 (10th Cir. 2007).

**B.**     **The Decision of the Commissioner**

Regarding Plaintiff's mental impairments, the ALJ noted that Plaintiff had

undergone both a physical examination and a psychological examination on December

12, 2008, and he summarized the reports of those examinations. (R. 23). He noted that at

the physical examination Plaintiff reported paranoia about being around people in public,

that the physician noted Plaintiff was oriented times three, his affect was normal, and

Plaintiff related well to the examiner.[3] Id. The ALJ also summarized the report provided

by Dr. Schwartz of a psychological examination he performed--also on December 12,

2008. Id. The ALJ recognized that Plaintiff reported difficulty interacting with others,

paranoia in public settings, and hearing voices. Id. He noted the results of mental status

testing performed by Dr. Schwartz, and acknowledged Dr. Schwartz's opinion that

Plaintiff cannot remember work locations and procedures, cannot follow or understand

simple directions, and cannot cope with the stress of a competitive work environment

which requires interaction with others. (R. 23).

The ALJ noted that Plaintiff began treatment at Prairie View Mental Health on

July 1, 2009, and he summarized that treatment. Id. He noted that over the course of that

treatment the GAF (Global Assessment of Functioning) scores assigned to Plaintiff

quickly improved from 49 to 55, and remained there throughout the treatment. Id. He

noted that the treatment "records reflect improvement with treatment," and that the

_____

[3]At this point in his decision, the ALJ did not name the examining physician, but
he cited exhibit 6F. (R. 23). The physician providing the report at exhibit 6F was Dr.
Morrow. (R. 318). Later, the ALJ mistakenly referred to this examiner as "Dr. Morris"
(R. 25), but the court will consistently refer to him as Dr. Morrow.

therapist recorded Plaintiff's report that he enjoys his role as the main caretaker for his children.  Id.

The ALJ summarized nurse-practitioner Martin's medical source statement dated January 11, 2010, and accorded it "little weight" because it is not supported by the evidence; because as a nurse-practitioner, Ms. Martin is not an "acceptable medical source;" because Plaintiff had only seen Ms. Martin a couple times when the opinion was prepared; and, because Ms. Martin's treatment records do not reflect the marked or extreme concerns contained in the opinion.  (R. 24).  The ALJ also summarized Dr. Schwartz's report and gave it "little weight."  (R. 25).  He provided reasons for discounting Dr. Schwartz's opinion, explaining that symptoms of anxiety and paranoia were not consistently documented in the medical record, that the evidence does not reflect significant borderline intellectual functioning because Plaintiff worked as a mechanic and had a driver's license; that Plaintiff was doing well on medication; and that Prairie View reported a GAF score of 55.  (R. 25).  Finally, the ALJ stated that he was in agreement with the opinions of the state agency consultants, Dr. Fantz and Dr. Warrender, because they provided specific reasons for their opinions which were grounded in record evidence and that the evidence entered into the record after their opinions were formulated would not significantly alter their findings.  (R. 26).

As discussed above, the record also includes opinion evidence in the form of letters from Ms. Martin, Plaintiff's treating psychiatric nurse-practitioner, and from Mr. Bremyer, Plaintiff's treating therapist, which was first presented to the Appeals Council

with Plaintiff's request for review of the ALJ's decision. (R. 275-76, 278). The Appeals

Council received that evidence and made it a part of the administrative record in this case.

(R. 4). Ms. Martin's letter explained that the GAF scores of 55 assessed by her for

Plaintiff since September 2009 "reflect the symptoms shown by [Plaintiff] in his present

living environment with the support of his family." (R. 275). She went on to explain:

> These scores do not take into consideration the affect the requirements of a
> competitive job would have on Mr. Wilson. They do not take into account
> the need for going into public, meeting with a supervisor, appearing at a job
> every day, and generally meeting all the mental requirements for a basic 8
> to 5 job. I described the effect these responsibilities or requirements would
> have on Mr. Wilson in the January 2010 mental impairment questionnaire.

(R. 275). She then reaffirmed the limitations presented in her January 11, 2010 medical

source statement, explaining that Plaintiff has extreme difficulties maintaining social

functioning, marked restrictions in daily activities, and in concentration, persistence, and

pace, and that Plaintiff's social anxiety, inability to communicate, and significant mood

swings make him unable to maintain an unskilled job. (R. 275-76). Mr. Bremyer

explained that he had reviewed Ms. Martin's medical source statement, agreed with the

limitations expressed therein, and believed that the limitations expressed "continue to be

true as of today's date." (R. 278).

In its notice denying Plaintiff's request for review of the hearing decision, the

Appeals Council noted that it had considered this evidence, but "found that this

information does not provide a basis for changing the Administrative Law Judge's

decision." (R. 1-2).

## C.    Analysis

Much in Plaintiff's briefs merely seeks to have the court reweigh the evidence and substitute its view for that of the Commissioner, a proposition it is not permitted to pursue.  Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.  Nevertheless, the court finds that errors in the decision described by Plaintiff require remand.  Plaintiff argues that the ALJ rejected the mutually supportive opinions of all of the mental healthcare providers who treated or examined Plaintiff, while agreeing with the state agency consultants who merely reviewed the record evidence but did not have the benefit of reviewing the treatment notes of Ms. Martin and Mr. Bremyer which document treatment occurring after the state agency consultants reviewed the record.  He also points to the evidence presented for the first time to the Appeals Council wherein Ms. Martin explained that her treatment notes reflect symptoms present while Plaintiff was living in a supportive environment with his family and did not experience the day-to-day stresses of a regular job, but that her medical source statement reflects limitations which would be present were Plaintiff to attempt to work competitively.

Ms. Martin explained that while her treatment notes reflect Plaintiff's functioning in a supportive environment, her medical source statement reflects limitations if Plaintiff were functioning in the competitive workplace outside of such a supportive environment. Dr. Schwartz found that "Because of a combination of his psychiatric symptoms and his low intelligence, I do not believe he could remember work location and procedures or understand and follow simple directions.  I do not believe he could cope with the stress of

a competitive work environment where he would have to interact with others." (R. 313). Mr. Bremyer concurred with Ms. Martin's opinion regarding limitations in a competitive, stressful workplace. These opinions provide each other significant mutual support. However, the only medical evidence reaching a contrary conclusion--the state agency consultants' opinions--did not have the benefit of any of Ms. Martin's or Mr. Bremyer's treatment notes or opinions, or of Ms. Martin's explanation presented for the first time to the Appeals Council.

Perhaps the court could identify substantial evidence in the record at the time the ALJ's decision was issued to support his finding that "evidence received into the record after [the state agency consultant's opinions were formed] did not provide any new or material information that would significantly alter" the decision. (R. 26). However, even the ALJ did not have the benefit of Ms. Martin's explanatory letter or of Mr. Bremyer's concurrence. Those documents, if accepted, provide material information which would significantly alter the decision, for they tend to negate much of the ALJ's basis for discounting Ms. Martin's and Dr. Schwartz's opinions. And, if those opinions are not properly discounted, disability is the only remaining option.

Even if an ALJ did not have the benefit of evidence presented for the first time to the Appeals Council, when that evidence is made a part of the administrative record by the Council, a reviewing court must consider that evidence to determine whether substantial record evidence supports the decision. See O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994) (holding that "new evidence becomes part of the administrative

13

record to be considered when evaluating the [Commissioner]'s decision for substantial evidence"); Chambers v. Barnhart, 389 F.3d 1139, 1142 (10th Cir. 2004) (same). Therefore, it is the court's task to determine whether the new evidence upsets the ALJ's decision. Martinez v. Astrue, 389 Fed. Appx. 866, 869 (10th Cir. 2010).

Here, the ALJ found that no evidence received after the state agency consultants' opinions would alter his agreement with their opinions. But, he did not have Ms. Martin's letter of explanation or Mr. Bremyer's concurrence. After receiving and reviewing Ms. Martin's letter and Mr. Bremyer's concurrence, the Appeals Council found merely that "this information does not provide a basis for changing the Administrative Law Judge's opinion." (R. 2). That finding simply cannot stand. As noted above, Ms. Martin's explanation, if accepted, provides material information which would significantly alter the ALJ's decision, for it tends to negate much of the ALJ's basis for discounting Ms. Martin's and Dr. Schwartz's opinions, and if those opinions are not properly discounted, disability is the only remaining option. Therefore, the letters must be considered and weighed in light of the administrative record. If there is no evidentiary basis to discount them, disability must be awarded. If there is a proper evidentiary basis to discount the letters, that basis must be explained based upon substantial evidence in the record. It is not within this court's jurisdiction to weigh the evidence in the first instance and decide whether or not Plaintiff is disabled. Therefore, remand is necessary for the Commissioner to consider the letters provided to the Appeals Council and to determine

14

the appropriate weight to be accorded to each of the medical opinions in the record in light of all of the record evidence.

**IT IS THEREFORE ORDERED** that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings consistent with this opinion.

Dated this 29th day of April 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**